UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTORIA BURHANS and CHLOË RIVERA,

Plaintiffs,

-against-

VITO LOPEZ and SHELDON SILVER,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/10/14

13 Civ. 3870 (AT)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, Victoria Burhans and Chloë Rivera, bring this action under 42 U.S.C. § 1983,

alleging gender discrimination and hostile work environment in violation of the Equal Protection

Clause of the Fourteenth Amendment.  Plaintiffs also assert parallel state and city law claims,

alleging violations of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §

290, and the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City

of New York § 8-107.  Defendant Sheldon Silver ("Silver"), moves to dismiss the amended

complaint (the "complaint") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim.  For the reasons set forth below, Silver's motion is DENIED.

## BACKGROUND

In this action, Plaintiffs, who both served as legislative aides to former New York State

Assemblyman Vito Lopez ("Lopez"), allege that prior to and during their employment, Silver, as

Speaker of the Assembly, "created a *de facto* policy or custom in which sexual harassment by

senior officials . . . was tolerated or condoned."  Am. Compl. ¶ 19.  Plaintiffs claim that Silver, in

the exercise of his statutory authority and while carrying out his administrative responsibilities,

was personally involved—through his actions and his acquiescence—in establishing a culture

that fostered the violation of Plaintiffs' constitutional right to a workplace free of gender-based

discrimination.  Plaintiffs also allege that they were sexually harassed by Lopez, that Silver

"personally assisted Lopez," that Silver was "deliberately indifferent" to Lopez's ongoing misconduct and that Silver was "grossly negligent in supervising Lopez." *Id.* ¶ 89.

In support of their allegations regarding Silver's role in the deprivation of their rights, Plaintiffs cite multiple complaints of sexual harassment against Assembly officials dating back more than a decade.[1] In 2001, Assembly employee Elizabeth Crothers "reported to Silver that Michael Boxley . . . Silver's chief counsel, had sexually assaulted her." *Id.* ¶ 20. Despite the accusation, Silver kept Boxley on. In 2003, Boxley was convicted of the crime of sexual misconduct under N.Y. Penal Law § 130.20. During his guilty plea, Boxley admitted under oath to having sex with another female Assembly employee without her consent. *Id.*; *In re Boxley*, 8 A.D.3d 949, 950 (2004). In 2009, a junior staff member for Assemblyman Micah Kellner complained to one of Kellner's senior aides that Kellner was sexually harassing her. The aide relayed the complaint to William Collins, the Assembly's Chief Counsel for the Majority "and who reported directly to Silver," and provided Collins with transcripts of chat exchanges between Kellner and the junior staff member. Am. Compl. ¶ 22. The Assembly, however, did not investigate the complaint, which Plaintiffs attribute to "a longstanding practice in the chamber of shielding members from embarrassment." *Id.* (citation omitted).

Plaintiffs also allege that Silver was directly involved in managing at least three recent, separate complaints of sexual harassment involving Lopez which were lodged prior to Plaintiffs' employment in his office. In December 2011, a Lopez employee ("Complainant One") complained to Yolande Page, the Assembly's Deputy Director of Administration, that Lopez had sexually harassed Complainant One and other women staff members. *Id.* ¶ 23. In response, Page informed Complainant One that she needed to contact the Office of Counsel for the Majority to

---

[1] The facts are taken from the complaint and are accepted as true for purposes of this motion. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

make a formal complaint. *Id.* ¶ 25. During the same month, a second Lopez employee ("Complainant Two") contacted Page about filing a sexual harassment complaint against Lopez. *Id.* ¶ 32. Both women were referred to Collins and Carolyn Kearns, the Assembly's Deputy Counsel for the Majority and Majority Counsel to the Ethics Committee. *Id.* ¶¶ 26, 28, 30, 32-34. At about the same time, Silver learned of the complaints against Lopez. *Id.* ¶¶ 27, 31, 36, 39. On January 11, 2012, Lopez fired Complainant Two, but Silver overruled Lopez's decision and retained Complainant Two on the Assembly payroll. *Id.* ¶ 37.

In January 2012, at the suggestion of James Yates, Counsel to the Speaker, Collins spoke with Deputy Attorney General Arlene Smoler, who informed Collins that the Assembly was legally obligated to conduct an investigation into the complainants' allegations. *Id.* ¶¶ 40, 41. At a January 24, 2012 meeting, Collins relayed Smoler's advice to Silver, Yates and Kearns. *Id.* ¶¶ 42, 43. Collins also expressed his own opinion that the Assembly was required to investigate. *Id.* ¶ 43. In February 2012, Silver transferred the complainants from Lopez's office to other jobs in the Assembly. *Id.* ¶ 46. Following private mediation, Silver approved a settlement whereby the Assembly paid a total of $103,080 to the complainants and Lopez paid $32,000. *Id.* ¶¶ 52, 55. However, Silver did not order an investigation into the allegations, did not refer the matter to the Ethics Committee, did not discipline Lopez and did not take measures "to protect the other employees in Lopez's office." *Id.* ¶¶ 44, 45, 54. In addition, at Silver's direction, Collins contacted the complainants and reminded them of their obligation to keep the settlement confidential. *Id.* ¶ 75.

In March 2012, Kearns spoke with another female employee who "was very stressed and urgently wanted to leave Lopez's office." *Id.* ¶ 47. Although the employee did not wish to file a

formal complaint, "Silver learned of [her] request for a transfer and the circumstances of her request," but did not take any action. *Id.* ¶¶ 48, 49.

In April 2012, Lopez hired Plaintiffs, both women in their twenties, as legislative aides. *Id.* ¶¶ 56, 57.  Shortly thereafter, Lopez began making unwelcome sexual overtures— commenting on their appearance and engaging in unwanted physical contact.  For example, Lopez insisted that Plaintiffs not wear a bra to work.  Lopez also touched Burhans' inner thigh, and grabbed Rivera's hand, tightening his grip when she tried to pull away. *See, e.g., id.* ¶¶ 66, 67.

In July 2012, Plaintiffs separately complained about Lopez's behavior to Kearns. *Id.* ¶¶ 68, 70.  In mid-July, Plaintiffs ceased working for Lopez, but Silver authorized their remaining on the payroll.  He eventually arranged their transfer to new jobs with other members of the Assembly. *Id.*

Plaintiffs' complaints were referred to the Assembly Standing Committee on Ethics and Guidance (the "Ethics Committee"), which concluded its investigation in August 2012. *Id.* ¶¶ 72, 73.  The Ethics Committee found Plaintiffs' allegations to be credible and recommended terminating Lopez's committee and seniority privileges. *Id.* ¶¶ 73, 74.  Silver publicly adopted the Ethics Committee's findings and imposed on Lopez the recommended sanctions. *Id.* ¶ 74. After the announcement, the New York State Joint Commission on Public Ethics began its own investigation and publicly released a "Substantial Basis Report" in May 2013, which found that for years Lopez had engaged in a pattern of behavior that included making demeaning comments about his female employees' appearance, demanding attention from them and rewarding and punishing them accordingly. *Id.* ¶¶ 82, 83.  Silver publicly endorsed expelling Lopez from the

4

Assembly, and before "an Assembly vote on commencing a process that could lead to Lopez's expulsion," Lopez resigned. *Id.* ¶ 84.

## DISCUSSION

I.  <u>Standard of Review</u>

For purposes of a 12(b)(6) motion, the Court must accept all factual allegations as true and draw all reasonable inferences in the non-moving party's favor. *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). However, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint "need not establish a *prima facie* case of hostile work environment at this stage." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012)

II.  <u>Section 1983 Claims</u>

A.  Applicable Law

An action under § 1983 has two elements:  the defendant must (1) act under "color of state law" to (2) deprive the plaintiff of a statutory or constitutional right. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Sexual harassment that "transcends coarse, hostile and boorish behavior" is actionable under § 1983 as a violation of the Equal Protection Clause. *Annis v. Cnty. of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994). Sexual harassment claims may be based on either direct "quid pro quo" discrimination, in which an employer "alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands," or on a hostile work environment, in which the

harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989) (internal alterations and quotation marks omitted).  When evaluating a hostile work environment claim, courts should consider the totality of the circumstances, such as the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's job performance.  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).  The analysis has both "objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* (internal quotation marks omitted).  In the case of a § 1983 claim of sexual harassment that creates a hostile work environment, a plaintiff must specifically show (1) intentional harassment, (2) based on sex, (3) under color of state law, (4) which was sufficient to render the environment hostile to the plaintiff.  *Cohen v. Litt*, 906 F. Supp. 957, 964 (S.D.N.Y. 1995).

Under § 1983, an individual defendant may be held liable only if he or she was "personally involved" in the deprivation of the plaintiff's rights.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Personal involvement may be demonstrated by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

6

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon*, 58 F.3d at 873). Although Plaintiffs bring their federal claims under § 1983, courts look to Title VII cases for guidance in § 1983 Equal Protection Clause actions. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996).

Silver contends that the allegations in the complaint are insufficient on four grounds: (1) he was not acting under color of state law; (2) he did not cause the deprivation of Plaintiffs' rights; (3) he did not act with discriminatory intent; and (4) he is entitled to qualified immunity.

B. Acting Under Color of State Law

Silver contends that Plaintiffs have failed to allege that he acted under color of state law because Plaintiffs' claims against Silver are based on his alleged inaction. "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Under New York law, Silver's duties include the appointment of employees and the authorization of expenditures. N.Y. Legis. Law §§ 7, 12. Amongst the Speaker's administrative responsibilities are "preserving order and decorum, appointing committee members and chairpersons, allocating staff, administering internal rules, and promulgating a budget adoption schedule." *Silver v. Pataki*, 96 N.Y.2d 532, 538 (2001). Pursuant to the Rules of the Assembly, the Speaker is responsible for drafting a sexual harassment policy. *See* Am. Compl. ¶ 18; Rules of the Assembly of the State of N.Y., Rule I (2011-2012). The March 2011 sexual harassment policy states that a sexual harassment complaint against a member of the Assembly "shall be referred" to the Ethics Committee and that the results of an investigation shall be reported to the Speaker along with a recommended remedy. Am. Compl. Ex. A, at 8.

The inaction alleged by Plaintiffs—Silver's failure to refer complaints of sexual harassment to the Ethics Committee, Silver's failure to discipline Lopez, and Silver's failure to take corrective measures to protect Lopez's other employees—are all, arguably, examples of Silver's failure to exercise his responsibilities as Speaker pursuant to the rules and policies of the Assembly.  Plaintiffs, therefore, have sufficiently alleged that Silver acted under color of state law.

C.  Personal Involvement and Causation

Silver raises numerous arguments as to why he did not cause the deprivation of Plaintiffs' rights.  Silver contends that Plaintiffs have not pleaded his personal involvement in the harassment, that Plaintiffs have merely alleged a failure to investigate, and that the link between Silver's inaction and Plaintiffs' harassment is too attenuated to establish causation.  Silver also argues that he adequately redressed Plaintiffs' complaints against Lopez and that any failure to investigate prior complaints made by non-parties is not relevant to Plaintiffs' claims.

In the context of sexual harassment, inaction may be actionable, and a failure to promptly and properly respond to complaints may expose a supervisor or employer to liability under anti-discrimination laws.  *See Duch v. Jakubek*, 588 F.3d 757, 766 (2d Cir. 2009); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) ("If an employer is on notice of a likelihood that a particular employee's proclivities place other employees at unreasonable risk . . . the employer does not escape responsibility to warn or protect likely future victims merely because the abusive employee has not previously abused those particular employees.").  Additionally, a failure to act that results in a policy or custom fostering unconstitutional behavior may constitute "personal involvement" under § 1983.  *See Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994) ("Section 1983 liability can be imposed upon individual employers, or responsible

8

supervisors, for failing properly to investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer."); *Wise v. New York City Police Dep't*, 928 F. Supp. 355, 368-69 (S.D.N.Y. 1996) (finding that a supervisory officer could be personally involved in an alleged deprivation of rights when the plaintiff had proffered evidence that the officer knew of the harassment but failed to remedy it).

Here, Plaintiffs adequately allege Silver's "personal involvement" in the unconstitutional conduct, through Silver's creation of a *de facto* policy or custom of tolerance of sexual harassment, through Silver's deliberate indifference to Lopez's misconduct and through Silver's grossly negligent supervision of Lopez. Moreover, Plaintiffs provide sufficient factual support to show how Silver may have plausibly caused Plaintiffs' injury. Plaintiffs claim that Silver was aware of prior incidents of sexual harassment involving Lopez and concealed them through confidential settlements and hushed reassignments. *See, e.g.*, Am. Compl. ¶¶ 27, 36, 46, 48, 49. Plaintiffs further allege that Silver repeatedly failed to take the appropriate steps to address Lopez's behavior. *See id.* ¶¶ 44, 50. By not taking such steps, Silver created a culture "in which Lopez believed that he could sexually harass the women on his staff with impunity." *Id.* ¶ 89.

Silver contends that he should not be held liable because he referred Plaintiffs' complaints about Lopez to the Ethics Committee for investigation, but Silver's argument misapprehends the scope of Plaintiffs' allegations. Plaintiffs' claim that Silver's action and inaction, in the face of over a decade of successive complaints of sexual harassment against senior Assembly officials, fostered a culture of sex-based discrimination. *Id.* ¶¶ 20, 22, 38, 47. It is not implausible, therefore, that Lopez's sexual harassment of Plaintiffs was a foreseeable product of this culture. Their allegations are not so threadbare as to warrant dismissal, and similar cases have survived motions to dismiss. *See, e.g.*, *Pedrosa v. City of New York*, 13 Civ.

1890, 2014 WL 99997, at *6 (S.D.N.Y. Jan. 9, 2014) (denying a motion to dismiss after finding that a supervisor's "failure to take action" could constitute personal involvement in employee's sexual harassment of the plaintiff); *Valenti v. Massapequa Union Free Sch. Dist.*, 09 Civ. 977, 2010 WL 475203, at *7-8 (E.D.N.Y. Feb. 5, 2010) (denying motion to dismiss when the plaintiff alleged that the defendant school district had a policy or custom of treating male and female teachers differently and the school principal was involved in effecting the policy); *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 501 (E.D.N.Y. 2001) (denying motion to dismiss Title VII claims against an employer when the employee alleged that senior management refused to address well-known sexual harassment in the workplace).

Furthermore, at the motion to dismiss stage, this Court need not decide whether Silver's acts or omissions were the proximate cause of Plaintiffs' injuries. *Cf. Vann v. City of New York*, 72 F.3d 1040, 1051 (2d Cir. 1995) ("Finally, we note that appellees also argue that even if there was deliberate indifference tantamount to a custom or policy, it did not cause Vann's injuries because Morrison was off duty when that assault occurred. The issue of causation remains to be decided by the jury."). This is not a case where the plaintiffs have offered mere conclusory assertions that Silver caused their rights to be violated. Plaintiffs have provided specific factual details such as names, dates and events to support their claims. *See Boykin v. KeyCorp*, 521 F.3d 202, 214-15 (2d Cir. 2008) (reversing dismissal of a complaint when the plaintiff provided "the particular events" and circumstances that gave rise to her claim and gave notice to the defendant). Assuming the truth of Plaintiffs' allegations and drawing all inferences in Plaintiffs' favor as non-moving parties, the Court finds that Plaintiffs have alleged sufficient facts to establish a plausible claim that Silver participated in and caused the deprivation of their rights.

10

D. Discriminatory Intent

Next, Silver argues that Plaintiffs have not alleged that he acted with discriminatory intent. Silver is incorrect. Plaintiffs' claims that Silver knew of previous sexual harassment complaints and shirked his legal responsibility to adequately address them and that he created a policy or custom in which Assembly officials were permitted to sexually harass employees are sufficient to establish intent. *See, e.g.*, Am. Compl. ¶¶ 44, 53, 55, 75.

To the extent that Silver argues that Plaintiffs have not alleged that he discriminated against them specifically on the basis of their sex, Silver misapprehends what is required at this stage. The Second Circuit has explained that:

> A plaintiff pursuing a sex-based hostile work environment claim "must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex." In many cases, this task is made easy when the "victim is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."

*Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (alternations omitted) (quoting *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 80-81 (1998)); *see also Gregory v. Daly*, 243 F.3d 687, 694-95 (2d Cir. 2001) (noting that in the context of both "tangible" discriminatory employment actions as well as less tangible hostile work environment claims, discriminatory intent may be unavailable through direct evidence but may still be found when the alleged conduct can be reasonably interpreted as resulting from the plaintiff's sex); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144 (2d Cir. 1993) ("Perhaps some public employers sexually harass both men and women, but until an employer has the audacity to advance such a defense, sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983."). Even after discovery is complete, direct evidence of discriminatory intent is

11

difficult to muster, and the trier of fact must often infer such intent based on circumstantial evidence. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001).   At the motion to dismiss phase, to keep their claims alive, Plaintiffs need only provide well-pleaded factual allegations, not evidence, of Silver's discriminatory actions and intent.  Plaintiffs have done so.

E.  Qualified Immunity

Silver argues that he is entitled to qualified immunity because neither Plaintiffs nor the earlier complainants had a right to an investigation of their sexual harassment complaints and because not granting qualified immunity would render him liable for every claim against every member of the Assembly.

An official is entitled to qualified immunity if his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (citation omitted).  The defense "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Id.* (quoting *Messerschmidt v. Millender*, ___ U.S. ___, 132 S. Ct. 1235, 1245 (2012)).  However,

> [i]n order to prevent the margin of immunity from overshadowing our interests in recovery . . . the right in question must not be restricted to the factual circumstances under which it has been established.  Thus, the Supreme Court has declined to say that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," and has, instead, chosen a standard that excludes such immunity if "in the light of pre-existing law the unlawfulness is apparent."

*Back*, 365 F.3d at 129 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his [or her] conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d

12

Cir. 2003) (internal citation and quotation marks omitted). The Court is required to draw all inferences in the non-moving party's favor. *Cf. Tolan v. Cotton*, 13-551, 2014 WL 1757856, at *4 (U.S. May 5, 2014) (per curiam) (reversing grant of qualified immunity where appellate court decided issues of material fact and failed to draw inferences in non-moving party's favor).

In this instance, neither the law nor the facts (taken as true for purposes of this motion) support Silver's claim of qualified immunity. First, Silver contends that the right at issue is the right to an investigation, but this argument misconstrues the nature of Plaintiffs' complaint. Plaintiffs are not claiming the right to a process, they are claiming the right to a result—a sexual harassment-free workplace—and under the well-defined law of the Second Circuit, they were entitled to one. *Saulpaugh*, 4 F.3d at 143-44. Plaintiffs allege that Silver was aware of Lopez's pattern of behavior, that Silver knew of his obligation to take corrective action, but that he instead permitted Lopez to continue unchecked. No reasonable official (and in this case a lawyer) could have believed that turning a blind eye to Lopez's misconduct was consistent with clearly established law. In fact, an official's failure to remedy known sexual harassment complaints has defeated claims of qualified immunity in the past. *See Emblen v. Port Auth. of New York/New Jersey*, 00 Civ. 8877, 2002 WL 498634, at *11 (S.D.N.Y. Mar. 29, 2002) (finding that the defendants were not entitled to qualified immunity when they were alleged to have chosen to ignore harassing behavior that "violated internal Port Authority regulations which were based in part on federal law"); *see also Wise*, 928 F. Supp. at 370-71 (denying qualified immunity when a supervisor's knowledge of harassment and failure to take remedial measures were disputed issues of material fact). Accordingly, the Court finds that Silver is not entitled to qualified immunity at this time.

III.   NYSHRL and NYCHRL Claims

Finally, Silver asks the Court to dismiss Plaintiffs' state and city law claims because
Silver is not an "employer" as required by the NYSHRL and NYCHRL.  To qualify as an
"employer" under the NYSHRL, an individual must have "an ownership interest in the relevant
organization or the 'power to do more than carry out personnel decisions made by others.'"
*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Patrowich v. Chem.
Bank*, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 12 (1984)).  A supervisor may also be considered an
"employer" under the NYSHRL if the supervisor "'actually participates in the conduct giving
rise to the discrimination.'"  *Feingold*, 366 F.3d at 157 (quoting *Tomka v. Seiler Corp.*, 66 F.3d
1295, 1317 (2d Cir. 1995)).

Although Silver is correct that he does not have an ownership interest in the Assembly,
Silver, as Speaker, undoubtedly has "the power to do more than carry out personnel decisions
made by others."  The Assembly sexual harassment policy is just one example of the breadth of
Silver's power and his role as Assembly disciplinarian.  After the Ethics Committee has
conducted an investigation into a complaint against a member of the Assembly, the Committee is
required to report its findings to the Speaker along with a "recommended remedy."  Any party
who is not satisfied with the grievance process may appeal directly to the Speaker.  Am. Compl.
Ex. A, at 8.  The fact that the proposed remedy is only a recommendation suggests that Silver has
the final say in whether to punish members for misconduct.  Plaintiffs have also alleged that
Silver has the authority to hire, fire and transfer employees (including Plaintiffs) and to control
employee pay.  *See id.* ¶¶ 17, 18, 70.  Such conduct has previously been found to constitute "the
power to do more."  *See Costabile v. Cnty. of Westchester, New York*, 485 F. Supp. 2d 424, 438
(S.D.N.Y. 2007) (finding that a Parks Department employee who possessed the authority to hire

and fire Parks Department employees constituted an "employer" under the NYSHRL); *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001) (finding that an employee who set schedules and salaries was "empowered to do more than simply carry out others' personnel decisions").

Moreover, Plaintiffs' state and city law claims may proceed because they sufficiently allege that Silver was personally involved in the conduct in question. *See, e.g., Stevens v. N.Y.*, 691 F. Supp. 2d 392, 401-02 (S.D.N.Y. 2009) (denying motion to dismiss § 1981, § 1983, NYSHRL and NYCHRL claims against a supervisor defendant when the plaintiff had alleged that the defendant had authority to address constitutional violations but did not act).

Regarding the NYCHRL claims, the Second Circuit requires the district court to analyze claims brought under the NYCHRL separately and construe the provisions more liberally than the federal or state law-based claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Because the Court finds that Plaintiffs have met their pleading burden as required by § 1983 and the NYSHRL, it likewise finds that Plaintiffs have met their burden under the more liberal NYCHRL. *See, e.g., Jeffrey v. Montefiore Med. Ctr.*, 11 Civ. 6400, 2013 WL 5434635, at *24 (S.D.N.Y. Sept. 27, 2013) (broadly construing provisions of NYCHRL and reaching same conclusions it reached with respect to federal and NYSHRL claims). Because the Court holds that Silver is an "employer" under the NYSHRL and NYCHRL and is alleged to have been personally involved in the conduct, it need not reach the issue of whether Silver is liable as an aider and abettor.

Finally, Silver asserts that he is entitled to qualified immunity under state and city law. "New York courts recognize the defense of qualified immunity to shield the government official from liability unless that action is taken in bad faith or without a reasonable basis." *Blouin ex*

15

*rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004).  For the same reasons provided in the Court's federal qualified immunity analysis, Silver could not have believed that his actions were reasonable under state or city law.  *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 587-88 (S.D.N.Y. 2011) (denying qualified immunity for NYSHRL and NYCHRL claims due to clear prohibition of sexual harassment under New York state and city law).  Accordingly, Silver is not entitled to qualified immunity with respect to the NYSHRL and NYCHRL causes of action.

## CONCLUSION

For the foregoing reasons, Silver's motion to dismiss the complaint is DENIED.  The parties are directed to submit a joint letter and proposed case management plan by **June 25, 2014** and to appear for an initial pre-trial conference on **July 2, 2014** at **4:30 p.m.**

The Clerk of Court is directed to terminate the motion at ECF No. 29.

SO ORDERED.

Dated: June 10, 2014
       New York, New York

_____
ANALISA TORRES
United States District Judge

16